IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-235 (2) |
| | § | C.A. No. C-06-45 |
| JOSE RAMIREZ-CRUZ, | § | |
| | § | |
| Defendant/Movant. | § | |

### ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Jose Ramirez-Cruz's ("Ramirez-Cruz") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (D.E. 64),[1] which was received by the Clerk on January 24, 2006. The Court ordered the government to respond. (D.E. 65). After seeking and receiving several motions for extension of time to respond, the government filed a combined response, and motion to dismiss, or, in the alternative, for summary judgment on May 22, 2006. (D.E. 72). To date, Ramirez-Cruz has not filed a reply. As discussed in detail herein, all of Ramirez-Cruz's claims, except one, are subject to dismissal because he waived his right to file those claims. His other claim, which falls outside the scope of his waiver, fails on its merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Ramirez-Cruz a Certificate of Appealability ("COA").

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Dockets entries refer to the criminal case, C-05-cr-235.

1

## II.  FACTS AND PROCEEDINGS

**A.     Summary of Offense**[2]

On March 31, 2005, Falfurrias, Texas police officers received information in reference to a suspicious vehicle on the outskirts of town.  Upon arriving in the area, an officer observed a cargo truck fitting the description given.  A traffic stop was initiated and Ronald Howard Smith (United States citizen) was identified as the driver, along with two front seat passengers, Maria Rodriguez-Cantu (Resident Alien) and Ramirez-Cruz, who is an undocumented alien.  The truck was similar to a U-Haul type cargo vehicle with a box area in the back.  Sixteen undocumented aliens were discovered in the back of the truck.

Smith was arrested and requested an attorney.  Rodriguez stated that Smith was her boyfriend and that earlier that day, Smith had asked her if she wanted to travel to Falfurrias from Mission, Texas, where they lived, to visit some relatives.  Later, Smith advised that they were going to "pick up some people."  Rodriguez also stated that it appeared that Smith and Ramirez-Cruz knew each other by the way they interacted.  Ramirez-Cruz stated that he was with the original group and was just trying to get further north.  He denied previously knowing Smith.  Two of the undocumented aliens served as material witnesses, and told the Border Patrol that Ramirez-Cruz had been the individual who guided the group around the checkpoint, made contact with the truck's driver and loaded the aliens into the cargo portion of the truck.  One testified that he had made his transportation arrangements directly with Ramirez-Cruz.

Smith subsequently advised Bureau Immigration and Customs Enforcement agents that he and Ramirez-Cruz transported another load of illegal aliens consisting of 22 to 25 persons approximately two weeks prior to the instant offense.  According to Smith, Ramirez-Cruz and another person guided

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 12 of the Presentence Investigation Report ("PSR").

this first group through the brush in order to circumvent the Falfurrias, Texas Border Patrol checkpoint, and then Smith picked up Ramirez-Cruz and the group of aliens. They all traveled to Houston, Texas, where the aliens were met by a female in a pickup truck. Smith and Ramirez-Cruz returned to Mission, Texas.

**B.    Criminal Proceedings**

On April 1, 2005, a criminal complaint was signed charging Ramirez-Cruz, Smith and Maria Rodriguez-Cantu with transporting illegal aliens within the United States, in violation of 8 U.S.C. § 1324. (D.E. 1). On April 13, 2005, Ramirez-Cruz was named in a two-count indictment along with Smith, in which they were charged with two separate counts of aiding and abetting each other in transporting an illegal alien within the United States by means of a motor vehicle, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II) and 1324(a)(1)(B)(ii).[3] (D.E. 25). On May 13, 2005, Ramirez-Cruz pleaded guilty to Count One pursuant to a written plea agreement with the government. (D.E. 44, 45). In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend a sentence at the lowest end of the applicable guideline range and to move to dismiss Count Two at the time of sentencing. (D.E. 45 at ¶ 2).

The plea agreement included a voluntary waiver of Ramirez-Cruz's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 USC. [sic] § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United

---

[3] Each count was for the transportation of a different individual. Count One charged them with transporting Eustaquiao Diaz, and Count Two charged them with transporting Max Antonio Sanchez Hernandez.

>States, as set forth in 18 USC § 3742(b). Additionally, the defendant is aware that Title 28, USC § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 45 at ¶ 7) (emphasis in original). The agreement was signed by both Ramirez-Cruz and his counsel.

At Ramirez-Cruz's rearraignment, the Court specifically questioned Ramirez-Cruz under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

>**THE COURT:** In your plea agreement, you're giving up two valuable rights that I want to go over with you again before I ask Mr. Duke to outline your plea agreement. First, you're giving up the right to appeal, unless I sentence you to a sentence that is higher than five years or higher than the applicable advisory guidelines, absent a motion from the U.S. Attorney.
>
>Independent of this right to appeal is another right that you're giving up that's also a personal right that only belongs to you, and only you can give it up, and it's a right to bring what's called a post-conviction remedy. It's also called a writ of habeas corpus or statutory 2255. And you could attempt, through this process, to try to set aside either your conviction and/or your sentence by challenging matters such as constitutionality, ineffective assistance of counsel or jurisdiction, to name a few. But if you go forward today, you give up these rights forever. Do you understand that . . . Mr. Ramirez Cruz?
>
>**DEFENDANT RAMIREZ-CRUZ**: Yes.

(D.E. 69, Rearraignment Transcript ("R. Tr.") at 20-21).

The Court showed Ramirez-Cruz a written copy of the plea agreement. Ramirez-Cruz testified that the agreement was his, that he had signed the last page, and it had been read to him completely in Spanish and he had discussed it completely with his attorney before signing it. (R. Tr. at 24-25). It is clear from the foregoing that Ramirez-Cruz's waiver of § 2255 rights was knowing and voluntary.

4

See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report. (D.E. 46). The Second Amended PSR (hereinafter referred to simply as "PSR") calculated Ramirez-Cruz's base offense level for the offense at 12. (PSR at ¶¶ 20-21). It added six levels pursuant to U.S.S.G. § 2L1.1(b)(2)(B) because thirty-eight aliens were transported in the two loads, and another two levels pursuant to U.S.S.G. § 2L1.1(b)(5) because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person. (PSR at ¶¶ 20-21). The PSR recommended that Ramirez-Cruz not be given credit for acceptance of responsibility because he made inconsistent statements during the proceedings, including statements that minimized his participation in the offense. (PSR at ¶¶ 15-17). The PSR thus calculated his total to be 20, which, coupled with his criminal history category of I, resulted in a guideline term of imprisonment of 33 to 41 months. (PSR at ¶¶ 18-20, 32, 45).

Ramirez-Cruz, through counsel, filed written objections to the PSR. (D.E. 53). In particular, he objected to a number of factual assertions in the PSR, including the testimony from the two material witnesses that he had participated in making arrangements to transport them, or that he was going to get paid. He also flatly denied the allegations made by Smith and denied that he has ever been involved with illegal aliens, prior to the incident for which he was arrested and charged. He thus objected to including the additional 22 aliens as relevant conduct. He also objected to the increase for creating a substantial risk of death or serious bodily injury on the grounds that he did not provide the vehicle nor anticipate how many individuals would get into the truck. He also argued that he should be given a 2-level reduction for acceptance of responsibility. (See D.E. 53).

Sentencing was held on August 26, 2005. (D.E. 54). Ramirez-Cruz's counsel reiterated his

objections, and the Court heard testimony from Smith and from Ramirez-Cruz, as well as admitting the deposition testimony of the two material witnesses. (See generally D.E. 70, Sentencing Transcript ("S. Tr.")). The Court overruled Ramirez-Cruz's objections. (S. Tr. at 38). The government recommended the lowest end of the guidelines, consistent with its obligations in the plea agreement, but the Court sentenced Ramirez-Cruz to the highest end of the guidelines, 41 months. (S. Tr. at 38). The Court also imposed a three-year term of supervised release, a $50 fine and a $100 special assessment. (D.E. 54, 61). Judgment of conviction and sentence was entered September 1, 2005. (D.E. 61). Consistent with his waiver of appellate rights, Ramirez-Cruz did not appeal. Ramirez-Cruz's timely § 2255 motion was received by the Clerk on January 24, 2006. (D.E. 64).

### III. MOVANT'S ALLEGATIONS

In his motion, Ramirez-Cruz lists three grounds for relief. First, he copies from one of the possible grounds listed on the § 2255 form, and simply states that his conviction was obtained "by plea of guilty which was unlawfully inducted or not made voluntarily or with the understanding of the nature of the charge and the consequences of the plea." In support of this ground, he claims that his counsel induced him to plead guilty "under the lure" of getting a lesser sentence. He appears to be claiming that his attorney told him he should receive a sentence from between 12 and 18 months, instead of the 41-month sentence he actually received.[4]

Second, he claims that his conviction was obtained unlawfully because the Court utilized the testimony of "a codefendant witness," presumably Smith, to enhance his sentence.

Third, he claims that his counsel was ineffective for failing to challenge the Court's use of

---

[4] In its response, the government erroneously states that Ramirez-Cruz "has failed to allege any facts whatsoever" in support of his first ground for relief. (D.E. 72 at 12). Although he does not address this claim in his supporting memorandum, his motion provides itself sufficient detail to allow the Court to understand his claim. (See D.E. 64 at 5).

6

Smith's testimony to enhance his sentence. (D.E. 64 at 5). In his supporting memorandum, he also makes general claims that Mr. Diaz's performance was generally deficient, and that Mr. Diaz attempted to conceal his inadequacies by lodging objections to the PSR "solely for the purpose of making a record." (D.E. 64, Supp. Mem. at 5). He also asks for an evidentiary hearing.

The government has moved for dismissal or, in the alternative, for summary judgment against Ramirez-Cruz's motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal or summary judgment because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations. (D.E. 72 at 1).

For the reasons set forth herein, Ramirez-Cruz's claims fail.

## IV. DISCUSSION

**A.      28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Ramirez-Cruz has procedurally defaulted his claims by failing to appeal. Rather, the Court concludes that he validly waived all of the claims unrelated to his

plea, and thus it does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

His claim that he received ineffective assistance of counsel when entering into the plea agreement, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to this claim.

**B.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance

actual prejudice is fatal to an ineffective assistance claim.").

Ramirez-Cruz argues that his attorney was deficient for informing him that he would likely receive a sentence of 18 to 24 months, when he instead received a 41-month sentence. When viewing the record as a whole, it is clear that Ramirez-Cruz cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Ramirez-Cruz must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Ramirez-Cruz's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Ramirez-Cruz testified that he had had enough time to talk with his attorney, that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 15-16). The Court informed Ramirez-Cruz of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 17-20).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Ramirez-Cruz the maximum punishment that he might receive. Specifically, the Court informed him that he faced a maximum punishment of five years in prison, and a maximum fine of $ 250,000. The Court also informed him that there was a mandatory $100 special assessment, and a maximum supervised release term of three

years. (R. Tr. at 26-27). Ramirez-Cruz testified that he understood. (R. Tr. at 27). Ramirez-Cruz further testified that no one had threatened him or forced him to plead guilty, that his decision to plead guilty was entirely voluntary and that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (R. Tr. at 25-26, 30).

Ramirez told the Court that his attorney had discussed with him how the Sentencing Guidelines might apply in his case and that he understood that certain facts could increase his sentence. (R. Tr. at 27-29). The Court specifically mentioned the possibility that the number of aliens transported, "not only this day, on this day in March, but any prior times or subsequent times" could be added together and that the higher the number of aliens, the higher the sentence. (R. Tr. at 28). The Court also explicitly warned him that if he had endangered the aliens in any way, that his guidelines could be significantly higher. (R. Tr .at 28-29).[5] He testified that he understood.

The transcript also establishes that Ramirez-Cruz understood that only the Court could determine the sentence that he would ultimately receive and that any one else's estimate would not be binding on the Court:

> **THE COURT:** Do understand, sir, that your attorney's opinion of the guidelines is not necessarily that of mine, and that I'm not going to be able to determine what your guideline sentence is going to be or your advisory, any part of your sentence, until of course time of sentencing. ... Do you understand that . . . Mr. Ramirez-Cruz?
>
> **DEFENDANT RAMIREZ-CRUZ:** Yes.

(R. Tr. at 29-30).

Ramirez-Cruz's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v.

---

[5] In fact, prior to accepting his plea, the Court told him that he would most likely be held accountable for endangerment of the aliens being transported. (R. Tr. at 39).

Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Ramirez-Cruz's sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew that any estimates by his attorney were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced or induced him to plead guilty.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Ramirez-Cruz reaffirmed that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 6). This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.[6]

Notably, Ramirez-Cruz does not affirmatively allege that he would have insisted on proceeding to trial had he believed he would be sentenced to 41 months. Indeed, Ramirez-Cruz does not claim – even now – that he is not guilty of the offense. Moreover, Smith's testimony and the testimony of two impartial material witnesses provided ample evidence of his guilt.

In short, Ramirez-Cruz does not allege – and cannot show – that he would have insisted on going to trial but for counsel's performance. Thus, Ramirez-Cruz cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was

---

[6] The Court does not construe Ramirez-Cruz as claiming that his counsel "promised" him he would receive any specific sentence, but rather that his counsel underestimated his exposure. In any event, he could proceed on a claim that his counsel promised him a particular sentence only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id. Ramirez-Cruz has not alleged any facts about the identity of any witnesses to the promise, and has not provided any evidence showing the merit of his allegations. Thus, he would be unable to obtain relief under the Cervantes exception.

deficient. His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Ramirez-Cruz's sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**C.      Waiver of § 2255 Rights**

It is clear from the rearraignment that Ramirez-Cruz understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 18-19). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Ramirez-Cruz's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary. Ramirez-Cruz's remaining claims, which challenge the Court's and his counsel's actions at sentencing, clearly fall within the scope of that waiver.

In sum, while Ramirez-Cruz's ineffective assistance claims as to his plea is denied on the merits, his remaining claims of ineffective assistance fall within the scope of his waiver. Therefore, they are not properly before the Court. For these reasons, Ramirez-Cruz's § 2255 motion is DENIED in its entirety.

**D.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ramirez-Cruz has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th

Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ramirez-Cruz is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

## V.  CONCLUSION

For the above-stated reasons, Ramirez-Cruz's motion under 28 U.S.C. § 2255 (D.E. 64) is DISMISSED WITH PREJUDICE.  The Court also DENIES Ramirez-Cruz a Certificate of Appealability.

ORDERED this 7th day of September, 2006.

_____
Janis Graham Jack
United States District Judge